FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

14 MAR 20 PM 12: 38

OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | 8:14CR95 |
|---|---|
| Plaintiff, | INDICTMENT |
| vs. | 18 U.S.C. § 371 |
| | 18 U.S.C. § 2421 |
| | 18 U.S.C. § 2422(a) |
| LOUIS A. VENDITTE, | 18 U.S.C. § 1952(a)(3)(A) |
| RUBY A. VENDITTE, and | 18 U.S.C. § 2 |
| JOHN W. WAGSTAFFE, | 18 U.S.C. § 981(a)(1)(C) |
| | 28 U.S.C. § 2461 |
| Defendants. | 18 U.S.C. § 2428 |

The Grand Jury charges:

## INTRODUCTION

At all times material to this Indictment:

1. LOUIS A. VENDITTE and RUBY A. VENDITTE were husband and wife and residents of Douglas County, Nebraska.

2. JOHN W. WAGSTAFFE was a resident of Douglas County, Nebraska.

3. Starting on an unknown date but at least from on or about 2003 through on or about October, 2013, LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE owned, managed and operated a business located at 623 South 16th Street, Omaha, Nebraska, also referred to as 613 South 16th Street, Omaha, Nebraska. The business was identified by the name "Goodfellas."

4. On or about July 9, 1996, LOUIS A. VENDITTE and RUBY VENDITTE opened a bank account at Security National Bank, said account being opened as "Ruby A. Venditte dba Goodfellas." LOUIS A. VENDITTE and RUBY A. VENDITTE were identified as owners of the account. On August 28, 2006, the Security National Bank account name was changed to

1

"Ruby's Niteclub." LOUIS A. VENDITTE and RUBY A. VENDITTE were identified as owners of the account.

5. On or about 2009, Ravanite Inc. ("Ravanite") was incorporated as a Nebraska nonprofit corporation. Ravanite's Articles of Incorporation indicate that the "purposes" of Ravanite are and shall be "general charitable purposes, which may include but shall in no sense be limited to the implementation of action to keep families including children together and to effect the reunification of such families in cases in which they have in fact become broken / disunified" and for the operation of any business directly related to the "foregoing purpose." JOHN W. WAGSTAFFE was identified as the "Sole incorporator" and an "Initial Director" of Ravanite. LOUIS A. VENDITTE was identified as a "Director" of Ravanite.

6. On or about September, 2009, Ravanite entered into a Purchase Agreement whereby RUBY VENDITTE purportedly sold to Ravanite the business known as "Ruby's Nite Club," which was identified as a liquor establishment located at 623 South 16th Street, Omaha, Nebraska. JOHN W. WAGSTAFFE signed the Purchase Agreement on behalf of Ravanite as its "President."

7. On or about September, 2009, Ravanite entered into a Rental Agreement for the property located at 623 South 16th Street, Omaha, Nebraska, also referred to as 613 South 16th Street, Omaha, Nebraska. The Rental Agreement indicates that use of the property by Ravanite is for operation of a liquor business. JOHN W. WAGSTAFFE signed the Rental Agreement on behalf of Ravanite as its "President."

8. On or about March 8, 2010, a bank account was opened at Bank of Nebraska, which account was opened as "Ravanite, Inc. dba Goodfellas." JOHN W. WAGSTAFFE was identified as owner of the account.

9. From July, 2009, through at least July, 2013, Ravanite did not pay income tax, FICA tax, or report earnings from the operation of Goodfellas. In fact, Ravanite was an alter-ego of LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE, who in their individual capacity were the actual owners, managers, and operators of Goodfellas.

## COUNT I
## (CONSPIRACY)

10. The Grand Jury reincorporates the allegations contained in paragraphs 1 through 9 of this Indictment as if fully set forth herein.

## THE CONSPIRACY AND ITS OBJECTS

11. Starting on an unknown date but at least from on or about 2003 through on or about October, 2013, in the District of Nebraska and elsewhere, LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE and others both known and unknown to the Grand Jury, did unlawfully, willfully and knowingly conspire, combine, confederate and agree together and with other persons, to commit the following offenses against the United States:

    A. To knowingly transport an individual in interstate commerce with intent that such individual engage in prostitution and any sexual activity for which any person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2421.

    B. To knowingly persuade, induce, entice, and coerce an individual to travel in interstate commerce to engage in prostitution and any sexual activity for which any person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2422(a).

    C. To knowingly travel in interstate commerce, namely the State of Iowa, and to knowingly use a facility in interstate commerce, namely advertisements placed in the American Classifieds, a publication distributed in interstate commerce, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment

and carrying on of an unlawful activity, that is, a business enterprise involving prostitution, in violation of Nebraska Revised Statute Sections 28-801 and 28-802 and Title 18, United States Code, Sections 2421 and 2422(a), and thereafter performed and attempted to perform an act to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment and carrying on of such unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3)(A).

## MANNER AND MEANS OF THE CONSPIRACY

12. It was part of the conspiracy that LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE operated and caused to be operated Goodfellas as a front for prostitution related activities.

13. Goodfellas was advertised as a club featuring "exotic dancers" who appeared on stage in bikinis or similar attire (identified individually as a "Worker" or collectively as "Workers"). Goodfellas' typical hours of operation were from approximately 6 p.m. to approximately 9 p.m., Monday through Saturday.

14. LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE hired only female Workers at Goodfellas. Workers were paid with cash each week for hours worked and drinks sold to customers of Goodfellas. Wages paid to Workers were not reported to the Internal Revenue Service. Since 2010, LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE have not reported income earned by them from their operation of Goodfellas to the Internal Revenue Service.

15. LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE would typically advertise for employment at Goodfellas in the American Classifieds, a publication distributed in interstate commerce. The advertisement would indicate employment was available for dancers and wait-staff. The advertisement identified the phone number of

LOUIS A. VENDITTE as a contact number for Goodfellas. The American Classifieds is an interstate advertisement newspaper and internet website which is distributed in interstate commerce.

16. In response to the American Classifieds newspaper and internet advertisements for employment, potential Workers applied for jobs at Goodfellas by contacting LOUIS A. VENDITTE or RUBY A. VENDITTE using the telephone number identified in the employment advertisement. Potential Workers were interviewed by LOUIS A. VENDITTE, RUBY A. VENDITTE, or JOHN W. WAGSTAFFE and then hired to work at Goodfellas. Workers were not required to complete Internal Revenue Service employment tax forms.

17. While Goodfellas was represented as a club featuring 'exotic dancers', in fact, Goodfellas was a front for prostitution, as LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE well knew. After being hired, Workers were persuaded and encouraged to engage in sex acts with Goodfellas' customers for a monetary fee. The majority of customers received sex acts from the Workers in exchange for money.

18. Some of Goodfellas' customers traveled to Goodfellas from the State of Iowa for purposes of engaging in sex acts with the Workers. Some of Goodfellas' Workers also traveled to Goodfellas from the State of Iowa for purposes of engaging in sex acts with Goodfellas' customers.

19. For a sex act with a Worker, the customer paid an agreed upon monetary fee based on the type of sex act that would be provided. LOUIS A. VENDITTE and RUBY A. VENDITTE instructed Workers on what monetary fee was to be charged to customers who received sex acts. Typically, before a sex act would take place, the customer would give the monetary fee to the Worker, who then gave the money to LOUIS A. VENDITTE or RUBY A. VENDITTE. Sometimes the monetary fee was given directly to LOUIS A. VENDITTE or

RUBY A. VENDITTE. The monetary fee was paid in cash by customers. LOUIS A. VENDITTE or RUBY A. VENDITTE would allow certain customers to pay the monetary fee at a later time after the sex act occurred.

20. LOUIS A. VENDITTE and RUBY A. VENDITTE would keep 50% of the monetary fee for the sex act and the Worker would keep 50% of the monetary fee for the sex act. Customers often also gave a separate "tip" to the Worker for the sex act. LOUIS A. VENDITTE and RUBY A. VENDITTE would keep 50% of the tip for the sex act and the Workers would keep 50% of the tip for the sex act.

21. Sex acts would take place in "bedrooms" or a "kitchen" area located within the Goodfellas' premises. Oftentimes, Workers would have to obtain a key to the bedrooms from LOUIS A. VENDITTE or RUBY A. VENDITTE. LOUIS A. VENDITTE or RUBY A. VENDITTE would also provide Workers condoms for use during the sex acts.

22. JOHN W. WAGSTAFFE invested personal funds into the advertisement, operation, maintenance, and upkeep of Goodfellas. This included payment for the remodeling of areas where sex acts took place between Workers and customers.

23. A new customer did not receive sex acts from a Worker until they were "approved" by LOUIS A. VENDITTE. Once approved, customers could thereafter receive sex acts from Workers in exchange for the agreed upon monetary fee.

24. LOUIS A. VENDITTE and RUBY A. VENDITTE directed and managed Workers at Goodfellas, which included hiring, firing, and scheduling Workers. LOUIS A. VENDITTE and RUBY A. VENDITTE also directed, persuaded, and coerced Workers to socialize with customers of Goodfellas with the intent that Workers would engage in sex acts with customers for an agreed upon monetary fee. LOUIS A. VENDITTE and RUBY A.

VENDITTE also handled revenues and paid Goodfellas' expenses out of their personal bank account.

25.  LOUIS A. VENDITTE and RUBY A. VENDITTE also traveled in interstate commerce from the State of Nebraska into the State of Iowa and from the State of Iowa into the State of Nebraska to transport Workers who engaged in sex acts at Goodfellas or other locations. LOUIS A. VENDITTE and RUBY A. VENDITTE would charge customers a monetary fee for sex acts that occurred at Goodfellas or in the State of Iowa.

26.  LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE used proceeds from the operation of Goodfellas to promote the business activities of Goodfellas. As a means of promoting the activities of Goodfellas, LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE used and caused to be used funds received from Workers who engaged in sex acts to pay for Goodfellas' advertising expenses and bills, among other things.

## OVERT ACTS

27.  In furtherance of the conspiracy and to effect the objects thereof, overt acts were committed in the District of Nebraska and elsewhere, including but not limited to, the following:

   A. On or about December 6, 2010, JOHN W. WAGSTAFFE paid American Classifieds for an employment advertisement of Goodfellas.

   B. On or about March 20, 2012, LOUIS A. VENDITTE placed an advertisement for employment at Goodfellas in the American Classifieds, a publication distributed in interstate commerce.

   C. On or about April 17, 2012, RUBY A. VENDITTE paid American Classifieds for the advertisement placed on March 20, 2012.

7

D. On or about December 26, 2012, RUBY A. VENDITTE accepted a monetary fee of $200.00 from a customer of Goodfellas for a sex act with a Worker.

E. On or about January 7, 2013, LOUIS A. VENDITTE accepted a monetary fee of $200.00 from a customer of Goodfellas for a sex act with a Worker.

F. On or about January 29, 2013, LOUIS A. VENDITTE and RUBY A. VENDITTE transported a Goodfellas' Worker from the State of Iowa into the State of Nebraska with the intent that the Worker would engage in sex acts with customers of Goodfellas for a monetary fee.

G. Between January, 2013, and August, 2013, LOUIS A. VENDITTE and RUBY A. VENDITTE transported a Worker from the State of Iowa into the State of Nebraska on a number of occasions with the intent that the Worker would engage in sex acts with customers of Goodfellas for a monetary fee, which monetary fee was paid to LOUIS A. VENDITTE or RUBY A. VENDITTE. After the sex acts, LOUIS A. VENDITTE or RUBY A. VENDITTE paid the Worker a portion of the monetary fee for the sex act. LOUIS A. VENDITTE and RUBY A. VENDITTE also kept as payment a portion of the monetary fee paid by the customer for the sex act.

H. Between January, 2013, and September, 2013, LOUIS A. VENDITTE or RUBY A. VENDITTE accepted money from customer that traveled from the State of Iowa into the State of Nebraska to engage in sex acts for a monetary fee at Goodfellas. After the sex act, LOUIS A. VENDITTE or RUBY A. VENDITTE paid the Worker a portion of the monetary fee for the sex act. LOUIS A. VENDITTE and RUBY A. VENDITTE also kept as payment a portion of the monetary fee paid by the customer for the sex act.

I. On or about October 9, 2013, RUBY A. VENDITTE accepted $400.00 from a customer with the intent that the Goodfellas' customer would have sex with two (2) Workers.

All in violation of Title 18, United States Code, Section 371.

## COUNT II

### (TRANSPORTATION FOR PURPOSES OF PROSTITUTION)

28. The Grand Jury reincorporates the allegations contained in paragraphs 1 through 9 and 12 through 26 of this Indictment as if fully set forth herein.

29. On or between January, 2013, and August, 2013, in the District of Nebraska and elsewhere, LOUIS A. VENDITTE and RUBY A. VENDITTE, defendants herein, did knowingly transport or attempt to transport an individual in interstate commerce or foreign commerce, with the intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense.

30. The above offense was committed and carried out in the course of, and in furtherance of, the conspiracy set forth in Count I of the Indictment and while LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE were members of the conspiracy.

In violation of Title 18, United States Code, Sections 2421 and 2.

## COUNT III

### (INDUCEMENT AND ENTICEMENT TO ENGAGE IN PROSTITUTION)

31. The Grand Jury incorporates the allegations contained in paragraphs 1 through 9 and 12 through 26 of this Indictment as if fully set forth herein.

32. On or between January, 2013, and August, 2013, in the District of Nebraska and elsewhere, LOUIS A. VENDITTE and RUBY A. VENDITTE, defendants herein, did knowingly

persuade and attempt to persuade, induce, entice and coerce an individual to travel in interstate or foreign commerce, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense.

33. The above offense was committed and carried out in the course of, and in furtherance of, the conspiracy set forth in Count I of the Indictment and while LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE were members of the conspiracy.

In violation of Title 18, United States Code, Sections 2422(a) and 2.

## COUNT IV

### (USE OF A FACILITY IN INTERSTATE COMMERCE IN AID OF A RACKETEERING ENTERPRISE)

34. The Grand Jury reincorporates the allegations contained in paragraphs 1 through 9 and 12 through 26 of this Indictment as if fully set forth herein.

35. On or about March 20, 2012, in the District of Nebraska and elsewhere, LOUIS A. VENDITTE, defendant herein, did knowingly use a facility in interstate commerce, namely advertisements placed in the American Classifieds, a publication distributed in interstate commerce, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving prostitution, in violation of Nebraska Revised Statute Sections 28-801 and 28-802 and Title 18, United States Code, Sections 2421 and 2422(a), and thereafter performed and attempted to perform an act to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment and carrying on of such unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3)(A).

36.     The above offense was committed and carried out in the course of, and in furtherance of, the conspiracy set forth in Count I of the Indictment and while LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE were members of the conspiracy.

In violation of Title 18, United States Code, Section 1952(a)(3)(A) and 2.

## CRIMINAL FORFEITURE ALLEGATIONS

1.     The Grand Jury reincorporates the allegations contained in in Counts I through IV of this Indictment as if fully set forth herein for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461, and Title 18, United States Code, Section 2428.

2.     Pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461, upon conviction of offenses in violation of Title 18, United States Code, Section 1952 and Title 18, United States Code, Section 371, the defendants, LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to such violations. The property to be forfeited includes, but is not limited to, the property listed below.

3.     Pursuant to Title 18, United States Code, Section 2428, upon conviction of an offense in violation of Title 18, United States Code, Section 2421, the defendants, LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE, shall forfeit to the United States of America any property, real or personal, that was used or intended to be used to commit or to facilitate the commission of the offenses and any property, real or personal, constituting or derived from any proceeds obtained, directly or indirectly, as a result of the offenses. The property to be forfeited includes, but is not limited to, the property listed below.

4.     Pursuant to Title 18, United States Code, Section 2428, upon conviction of an offense in violation of Title 18, United States Code, Section 2422, the defendants, LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE, shall forfeit to the United States of America any property, real or personal, that was used or intended to be used to commit or to facilitate the commission of the offenses and any property, real or personal, constituting or derived from any proceeds obtained, directly or indirectly, as a result of the offenses. Such property includes, but is not limited to:

Money Judgment

Judgment against defendants in favor of the United States of America for a sum of money equal to the value of the property constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of the offenses alleged in Counts I through IV of this Indictment, for which the defendants are jointly and severally liable.

5.     By virtue of the commission of the felony offenses charged in Counts I through IV of this Indictment, any and all interest that LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE have in (1) any property, real or personal, constituting or derived from, any proceeds the defendant obtained, directly or indirectly, from the above offenses; and (2) any personal property that was used or intended to be used to commit or to facilitate the commission of the above offenses, is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(c), Title 28, United States Code, Section 2461, and Title 18, United States Code, Section 2428.

6.     If, as a result of any act or omission of LOUIS A. VENDITTE, RUBY A. VENDITTE, and JOHN W. WAGSTAFFE, the property identified above:

    a.    cannot be located upon the exercise of due diligence;
    b.    has been transferred or sold to, or deposited with, a third party;
    c.    has been placed beyond the jurisdiction of the court;
    d.    has been substantially diminished in value; or
    e.    has been commingled with other property which cannot be divided

without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) to seek forfeiture of any other property of said defendants up the value of said property listed above as being subject to forfeiture.

Pursuant to Title 18, United States Code, Section 981(a)(1)(c), Title 28, United States Code, Section 2461, and Title 18, United States Code, Section 2428.

A TRUE BILL

FOREPERSON

ROBERT C. STUART
Acting United States Attorney
District of Nebraska

The United States of America requests that trial of this case be held in Omaha, Nebraska, pursuant to the rules of this Court.

DONALD J. KLEINE
Assistant U.S. Attorney